## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID JOSEPH HUBER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.  10 cv-02526 (PJS/JJG) |
| | ) |
| MESA HOLDINGS, INC, a Minnesota corporation, and MESA FINANCIAL ADVISORS, INC., a Minnesota corporation, | ) |
| | ) |
| Defendants, | ) |
| and | ) |
| STARK & STARK, P.C., a New Jersey professional corporation, | ) |
| Nominal Defendant/Escrowee. | ) |

### FIRST AMENDED VERIFIED COMPLAINT

Plaintiff David Joseph Huber ("Huber"), by his attorneys, James E. Dorsey and Nicole Moen of the law firm of Fredrikson & Byron, P.A. and Jeralyn H. Baran of Chuhak & Tecson, P.C., complains against Defendant Mesa Holdings, Inc. ("Mesa") and Defendant Mesa Financial Advisors, Inc. ("Mesa Financial")[1] as follows:

---

[1] Defendant Stark & Stark, P.C. has been dismissed from this litigation.

## NATURE OF THE ACTION AND PARTIES

1.  Huber is a citizen of the State of Illinois.  Before April 1, 2007, he was the sole shareholder of Huber Financial Group, Ltd., an Illinois corporation, that provided investment advisory services in Illinois.

2.  Upon information and belief, Mesa is a Minnesota corporation which has its principal place of business at 5900 Green Oak Drive, Minnetonka, in the State of Minnesota.

3.  Upon information and belief, Mesa Financial is a Minnesota corporation which has its principal place of business at 5900 Green Oak Drive, Minnetonka, in the State of Minnesota.   Upon information and belief, Mesa Financial is a wholly owned subsidiary of Mesa.

4.  This action is for damages incurred by Huber arising from Mesa's breach of three promissory notes given to Huber as part of a stock sale as of April 1, 2007.  The first promissory note was made in the amount of One Million Nine Hundred Sixty Six Thousand Five Hundred and no/100 ($1,966,500.00) Dollars and was entered into between Huber and Mesa Financial ("the Promissory Note").  The second promissory note also was made in the amount of One Million Nine Hundred Sixty Six Thousand Five Hundred and no/100 ($1,966,500.00) Dollars and was entered into between Huber and Mesa Financial ("the Term Promissory Note").  The third promissory note was made in the amount of One Million Forty Nine Thousand Seventy and no/100 ($1,049,070.00) Dollars between Huber and Mesa Holdings, LLC ("the Zero Coupon Promissory Note").  Copies of the Promissory Note, the Term Promissory Note and the Zero Coupon

Promissory Note are attached hereto and incorporated herein as Exhibits A, B, and C, respectively.

## **JURISDICTION AND VENUE**

5. This Court has diversity jurisdiction of this action under 28 U.S.C. Section 1332 because Huber and the defendants are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is proper in this district under 28 U.S.C. Section 1391(a) because Mesa and Mesa Financial reside in this district and a substantial part of the events or omissions giving rise to Huber's claims occurred in this district.

7. This Court also has venue over this action because Huber and Mesa specifically selected this jurisdiction and venue in Section 5.02 of the Zero Coupon Promissory Note which provides that "This Note shall be deemed to be made under and shall be construed in accordance with the laws of the State of Minnesota without giving effect to the principals [sic] of conflict of laws thereof.  Each of the parties consents to the exclusive jurisdiction of the U.S. District Court sitting in the District of the State of Minnesota or the state courts of the State of Minnesota sitting in Hennepin County, Minnesota in connection with any dispute arising under this Note and hereby waives, to the maximum extent permitted by law, any objection, including any objection based on forum non conveniens to the bringing of any such proceeding in such jurisdictions." Exhibit C, § 5.02.

## THE HUBER FINANCIAL GROUP TRANSACTION

8. Pursuant to a Stock Purchase Agreement, executed on or about April 1, 2007, between Huber and Mesa Financial, Huber sold his shares in Huber Financial Group, Ltd. ("Huber Financial") for the sum of Six Million Fifty Thousand and no/100 ($6,050,000.00) Dollars. A copy of the Purchase Agreement is attached hereto and incorporated herein as Exhibit D.

9. Pursuant to the Stock Purchase Agreement, Mesa Financial was to pay One Million Seven Thousand Nine Hundred Thirty and no/100 ($1,007,930.00) Dollars in cash at the closing to Huber, and to pay the balance in three promissory notes. The breach of these promissory notes, Exhibits A, B, C, is the subject of this litigation.

10. Under the Stock Purchase Agreement, Mesa Financial agreed that Huber Financial would pay a percentage of its quarterly adjusted gross revenues on a quarterly basis to Mesa Financial. In return, Mesa Financial agreed it would provide centralized administrative and support services. Exhibit D, § IV. *Id*.

## THE KABAREC TRANSACTION

11. Mesa Financial also entered in a Stock Purchase Agreement with The Michael P. Karabec Trust of June 26, 1988 ("Karabec Trust"). As Mesa Financial did with Huber, Mesa Financial paid money to the Karabec Trust, which was the sole shareholder of Karabec Financial Advisors, Ltd ("Karabec Financial") at the closing, but financed the balance of the purchase price by entering into promissory notes with the Karabec Trust. *See* Complaint filed by the Karabec Trust in the United States District

Court for the District of Minnesota, on May 20, 2010, attached as Exhibit E ("Karabec Litigation").

12. As it did with Huber, Mesa Financial breached the promissory notes it entered into with the Karabec Trust, leading to the Karabec Litigation.

13. On December 23, 2010, a judgment was entered by the District Court of Minnesota against Mesa Financial, in the Karabec Litigation, for the unpaid principal and accrued interest, on the promissory notes to the Karabec Trust and its costs and reasonable attorneys' fees. A copy of judgment is attached as Exhibit F.

14. Mesa Financial has been found to have breached the promissory notes it entered into with the Karabec Trust in connection with Mesa Financial's purchase of the stock of Karabec Financial.

## BREACH OF THE PURCHASE AGREEMENT

15. Mesa Financial also breached its obligations by failing to provide centralized administrative support services to Huber Financial.

16. Huber fully performed his obligations under the Purchase Agreement.

17. Also, Mesa Financial agreed it would be in default under the terms of the Promissory Note and the Term Promissory Note and be obligated to pay the entire unpaid balance and accrued interest immediately at Huber's option should Mesa Financial default under any material contract or agreement with Huber or if Mesa Financial defaulted under two or more promissory notes in connection with the acquisition of any other entity. Exhibit D, § XIII, a(iv), (vi).

18.     Further, under the Stock Purchase Agreement, if Huber brings an action against Mesa Financial arising out of the agreement and prevails, it shall recover its reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution of the action.  Exhibit D, § XVI(e).

## ZERO COUPON PROMISSORY NOTE

19.     Under Section 1.02 of the Zero Coupon Promissory Note, Huber was required to convert a portion of the outstanding principal of the Note (the "Annual Amount") into Conversion Shares and/or cash in accordance with a specific schedule. Huber was required to convert 5% of the original principal by April 1, 2008, another 7.5% of the original principal by April 1, 2009, and another 10% of the original principal by April 1, 2010.

20.     Article III of the Zero Coupon Convertible Promissory Note sets forth the Events of Default.  Specifically, an "Event of Default" includes Mesa Holdings, LLC's failure to pay to Huber the amounts due under the Zero Coupon Promissory Note within thirty (30) days of an applicable Conversion Date in the Note.

21.     In the Event of Default under Section 3.01 of the Zero Coupon Promissory Note, the parties provided that Huber's sole and exclusive remedy was to accelerate full payment of the principal balance of the Note.

22.     Upon information and belief, Mesa Holdings, LLC converted to Mesa Holdings, Inc., and then assigned its rights and obligations under the Zero Coupon Promissory Note to Mesa.

## BREACH OF ZERO COUPON PROMISSORY NOTES

23. According to the conversion schedule set forth in Section 1.02 of the Zero Coupon Promissory Note, Mesa was to convert 10% of the outstanding principal on April 1, 2010.

24. Mesa failed to convert 10% of the outstanding principal on that date and still has refused to convert this amount more than thirty (30) days after the Conversion Date.

25. Huber has fully performed all obligations under the Zero Coupon Promissory Note.

26. When Mesa failed to convert 10% of the outstanding principal due to Huber on April 1, 2010, Huber notified Mesa of its failure. A copy of the Notice of Default Huber sent to Mesa on May 11, 2010, is attached hereto and incorporated herein as Exhibit G.

27. Even after being notified of its failure to make the 10% conversion payment, Mesa did not cure the breach nor convert the outstanding principal as required in Section 1.02 of the Zero Coupon Promissory Note.

28. This failure to convert 10% of the outstanding principal and failure to cure within thirty (30) days constitutes an Event of Default under Section 3.02 of the Zero Coupon Promissory Note.

## PROMISSORY NOTE

29. The Promissory Note was executed on April 1, 2007, by and between Huber and Mesa Financial. In it, Mesa Financial promised to pay Huber the principal

amount of $1,996,500, plus interest. The Promissory Note was to mature on April 1, 2013. Exhibit A, § 2. It was to be paid in six equal semi-annual installments, commencing on October 1, 2010. Id., § 2.

30.     Huber and Mesa Financial provided that Mesa Financial would be in default under the terms of the Promissory Note and the entire unpaid balance and accrued interest shall be immediately due and payable, at Huber's option, should Mesa Financial default under any material contract that it entered into with Huber and/or Huber Financial Group, Ltd. or if Mesa Financial defaulted on two or more promissory notes issued in connection with the acquisition of another entity by Mesa Financial. Exhibit A, § 6(iv), (vi).

## BREACH OF PROMISSORY NOTE

31.     Mesa's failure to convert 10% of the outstanding principal of the Zero Coupon Promissory Note and failure to cure constitutes an event of Default under the Promissory Note.

32.     Mesa Financial's breach of the Promissory Note issued to the Karabec Trust to pay for Mesa Financial's purchase of Karabec Financial constitutes a breach under the Promissory Note.

33.     Huber and Mesa Financial agreed that the prevailing party in any arbitration or litigation commenced to enforce or interpret any provision of the Promissory Note shall be entitled to receive, in addition to all other sums a relief, its reasonable costs and attorney fees. Exhibit A, § 8(c).

34.     Huber has fully performed all his obligations under the Promissory Note.

## TERM PROMISSORY NOTE

35. The Term Promissory Note also was executed on April 1, 2007, by and between Huber and Mesa Financial. $1,996,500, plus interest. Exhibit B. The Term Promissory Note was to mature on April 1, 2013. Id.

36. As with the Promissory Note, Huber and Mesa Financial provided that Mesa Financial would be in default under the terms of the Term Promissory Note and the entire balance and accrued interest shall be immediately due and payable, at the option of Huber, should Mesa Financial default under any material contract that it entered into with Huber and/or Huber Financial Group Ltd. or if Mesa Financial defaulted on two or more promissory notes issued in connection with the acquisition of another entity by Mesa Financial. Exhibit B, § 6(iv), (vi).

## BREACH OF THE TERM PROMISSORY NOTE

37. Mesa's failure to convert 10% of the outstanding principal of the Zero Coupon Promissory Note and failure to cure constitutes an event of Default under the Term Promissory Note.

38. Mesa Financial's breach of the Term Promissory Note issued to the Karabec Trust to pay for Mesa Financial's purchase of Karabec Financial constitutes a breach under the Term Promissory Note.

39. Huber and Mesa Financial again agreed that the prevailing party in any arbitration or litigation commenced to enforce or interpret any provision of the Term Promissory Note shall be entitled to receive, in addition to all other sums and relief, its reasonable costs and attorney fees. Exhibit B, § 8(c).

40. Huber has fully performed all of his obligations under the Term Promissory Note.

## DEFAULTS

41. Mesa breached the Zero Coupon Promissory Note by failing to make the required conversion on April 1, 2010.

42. Mesa Financial defaulted under the Promissory Note and the Term Promissory Note by defaulting under the Zero Coupon Promissory Note, and the Purchase Agreement.

43. Mesa Financial breached the Purchase Agreement, the Promissory Note, the Term Promissory Note and the Zero Coupon Promissory Note by defaulting on the Karabec Trust Promissory Notes, and by failing to provide centralized administrative and support services to Huber Financial.

44. With the occurrence of this Event of Default, Huber, as his sole and exclusive remedy under the Zero Coupon Promissory Note, seeks to enforce acceleration of the full repayment of the principal amount of the Zero Coupon Promissory Note. As of January 1, 2011, the amount due to Huber under the Zero Coupon Promissory Note is at least $960,565.95, the principal amount less payments made, plus accrued interest.

45. With the occurrence of the Defaults, Huber also seeks to enforce acceleration of the full repayment of the principal amount of the Promissory Note, and accrued interest, and to collect his reasonable costs and attorney fees in having to prosecute this action. As of January 1, 2011, the amount due under the Promissory Note for unpaid principal and interest is $2,483,325.93.

46. Further, with the occurrence of the Defaults, Huber seeks to enforce acceleration of the full repayment of the principal amount of the Term Promissory Note, and accrued interest, and to collect his reasonable costs and attorney fees in having to prosecute this action. As of January 1, 2011, the amount due under the Term Promissory Note for unpaid principal and interest is $2,483,325.93.

WHEREFORE, Plaintiff David Joseph Huber respectfully requests that this Honorable Court enter judgment in his favor and against Defendants Mesa Holdings, LLC and Mesa Financial Advisors, Inc. in an amount at least equal to $5,927,217.70, prejudgment interest, his costs and reasonable attorneys' fees, and for such other and further relief as this Court deems just and appropriate.

Dated:  February 1, 2011

s/ Nicole M. Moen
James E. Dorsey (#137893)
Nicole M. Moen (#329435)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Tel.:  (612)492-7079/7320
Fax:  (612) 492-7077
jdorsey@fredlaw.com
nmoen@fredlaw.com

Jeralyn H. Baran (IL #6204145)
*(admitted Pro Hac Vice)*
CHUHAK & TECSON, P.C
30 S. Wacker Drive, Suite 260
Chicago, IL 60606
Tel.:  (312) 444-9300
Fax:  (312) 444.9027
jbaran@chuhak.com

***Attorneys for Plaintiff David Joseph Huber***

- 12 -

## **VERIFICATION**

I, David Joseph Huber, verify under the penalty of perjury under the laws of the United States of America that I am the Plaintiff in the above-entitled action; that I have read the foregoing First Amended Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to those matters therein stated on information and belief and as to those matters I believe to be true.

s/ David Joseph Huber
David Joseph Huber
