David Joseph Huber v.
Mesa Holdings, Inc., et al.
Case No. 0:10-cv-02526 (PJS/JJG)

# EXHIBIT E

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Michael P. Kabarec, as Trustee under the Michael P. Kabarec Declaration of Trust dated June 29, 1988 | ) ) ) ) | No.: |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Mesa Financial Advisors, Inc., a Minnesota corporation, and Mesa Holdings, Inc., a Minnesota corporation | ) ) ) | **COMPLAINT** **(Jury Trial Demanded)** |
| Defendants, | ) ) | |
| and | | |
| Stark & Stark, P.C., a New Jersey professional corporation | | |
| Nominal Defendant/Escrowee. | | |

Plaintiff Michael P. Kabarec, as Trustee under the Michael P. Kabarec Declaration of Trust dated June 29, 1988 (the "Trust" or "Plaintiff"), as and for the Trust's Complaint against Defendant Mesa Financial Advisors, Inc. ("MFA"), a Minnesota corporation, and Mesa Holdings, Inc. ("Mesa Holdings"), a Minnesota corporation (collectively "Defendants"), and Nominal Defendant/Escrowee Stark & Stark, P.C. ("Stark & Stark"), a New Jersey professional corporation, states and alleges as follows:

### THE PARTIES

1.      Plaintiff is a trust organized and existing pursuant to the laws of the State of Illinois.  Plaintiff is both a minority shareholder of Defendant Mesa Holdings and a creditor of Defendants.

2.      Upon information and belief, Defendant Mesa Holdings is a Minnesota corporation with its principle place of business located at 5900 Green Oak Drive, Suite 208, Minnetonka, MN 55343.

3.      Upon information and belief, Defendant MFA is a Minnesota corporation with its principle place of business located at 5900 Green Oak Drive, Suite 208, Minnetonka, MN 55343.   Upon information and belief, MFA is a wholly owned subsidiary of Mesa Holdings and MFA and Mesa Holdings are alter egos of each other.

4.      Upon information and belief, Nominal Defendant/Escrowee Stark & Stark is a New Jersey professional corporation with a principle place of business located at 40 Lake Center Executive Park, 401 Route 73 North, Suite 130,   Marlton, New Jersey 08053.

## JURISDICTION AND VENUE

5.      This is an action by a creditor and shareholder of Defendants for breach of contract, enforcement of a security agreement, replevin of collateral, involuntary dissolution, and the appointment of a receiver.

6.      This Court has original jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and this action is between citizens of different states.  This Court has supplemental jurisdiction under § 1367(a).

7.      Defendants have transacted business within and reside in the State of Minnesota and this judicial district, thus Defendants are subject to the jurisdiction of this Court.

2

8.     Venue is proper in this district under 28 U.S.C. § 1391(a) because Defendants reside in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, and because it is consistent with the parties' contracts.

## FACTUAL ALLEGATIONS

### I.     THE STOCK PURCHASE AGREEMENT AND SUBSIDIARY AGREEMENTS

9.     Prior to October 8, 2008, Plaintiff was the sole shareholder and owner of Kabarec Financial Advisors, Ltd. ("KFA").   KFA was and is a financial practices corporation and investment advisor organized and existing under the laws of Illinois, with a principle place of business located at 220 North Smith Street, Suite 200, Palatine, IL 60067.

10.     Pursuant to a Stock Purchase Agreement executed on or about October 8, 2008, Plaintiff transferred all KFA stock to Defendants.  In addition, Defendants obtained all intellectual property and other rights relating to KFA, certain investment advisory contracts and other agreements related to certain KFA clients, all licenses and permits, including applications in process, used or usable in the conduct of KFA, and KFA's office equipment, furniture, fixtures or supplies.  A true and correct copy of the Stock Purchase Agreement is attached hereto as Exhibit A.

11.     Pursuant to the Stock Purchase Agreement, Defendants were required to pay $2,216,871.00 to Plaintiff.  This payment was to consist of $375,635.00 in cash, a Promissory Note in the aggregate amount of $743,520.00 (the "Note"), a Term

Promissory Note in the aggregate of $707,300.00 (the "Term Note"), and a Zero Coupon

Convertible Promissory Note in the aggregate amount of $390,686.00 (the "Zero Coupon

Note"), all delivered at closing.  True and correct copies of the Notes are attached hereto

as Exhibits B-D.

12.     Defendants also were required to issue 318,608 shares of Mesa Holdings

common stock to Plaintiff and 318,607 shares of Mesa Holdings common stock to Kirk

Hackbarth pursuant to the Stock Purchase Agreement and certain Stock Subscription

Agreements.

A. The Note.

13.     On or about October 1, 2008, Defendants made the Note payable to

Plaintiff in the amount of $743,520.00.

14.     Pursuant to the Note, Defendants were not required to start making

payments until April 1, 2012.  However, the Note contains a Default and Acceleration

provision which renders the entire unpaid balance and accrued interest immediately due

and payable upon an event of default.  Default under the Note includes any default under

the Zero Coupon Note.

B. The Term Note.

15.     On or about October 1, 2008, MFA made the Term Note payable to

Plaintiff in the amount of $707,300.00.

16.     Repayment of the Term Note was to be the date of maturity, October 1,

2014, or within thirty (30) days following a public offering of the common stock of Mesa

Holdings or the sale of all or substantially all of the stock and assets of Mesa Holdings.

However, the Term Note also contains a Default and Acceleration provision which renders the entire unpaid balance and accrued interest immediately due and payable upon an event of default. Default under the Term Note includes any default under the Zero Coupon Note.

      C.  The Zero Coupon Note

     17.    On or about October 1, 2008, Mesa Holdings issued the Zero Coupon Note to Plaintiff in the amount of $390,686.00.

     18.    The Zero Coupon Note set forth a mandatory conversion schedule, pursuant to which Plaintiff was to receive annual payments from Defendants on October 1, 2009; October 1, 2010; October 1, 2011; October 1, 2012; and September 30, 2013.

      D.  The Seller Note Pledge and Escrow Agreement.

     19.    On or about October 1, 2008, Defendants and Plaintiff also entered into a Seller Note Pledge and Escrow Agreement ("Escrow Agreement"). A true and correct copy of the Escrow Agreement is attached hereto as Exhibit E.

     20.    Defendants entered into the Escrow Agreement to induce Plaintiff to enter into the Stock Purchase Agreement and to accept the Zero Coupon Note as partial consideration under the Stock Purchase Agreement.

     21.    Pursuant to the Escrow Agreement, MFA agreed to pledge 100% of the KFA stock acquired pursuant to the Stock Purchase Agreement as security for payments due from Defendants to Plaintiff under the Zero Coupon Note.

     22.    The stock was deposited with Nominal Defendant/Escrowee Stark & Stark, who was also a party to the Escrow Agreement.

23.     Pursuant to the Escrow Agreement, Plaintiff received a first priority security interest in 51% of the KFA stock, and received a subordinate security interest in the remaining 49% of the stock.

24.     Pursuant to the Escrow Agreement, Plaintiff had the right, following written demand, to immediate possession of 51% of the KFA stock upon Defendants' default under the Zero Coupon Note.   Plaintiff also had the right to repossess the remaining 49% of the KFA stock if it made sufficient payments pursuant to a contractually defined payback schedule.

25.     Pursuant to the Escrow Agreement, in the event of a disagreement about a default under the Escrow Agreement, Stark & Stark has discretion to deposit all KFA stock and related materials to the clerk of the United States District Court sitting in the District of Minnesota, and, upon notification to all parties, all liability on the part of Stark & Stark will cease.

## II.    DEFENDANTS' ONGOING OBLIGATIONS UNDER THE STOCK PURCHASE AGREEMENT.

26.     The Stock Purchase Agreement provided for ongoing obligations.

27.     Among other things Michael Kabarec and Kirk Hackbarth were to deliver to Defendants Management Agreements entered into with KFA.   In exchange for certain compensation and benefits, Michael Kabarec and Kirk Hackbarth contractually agreed to operate KFA on the terms set forth in the Management Agreements.   Michael Kabarec and Kirk Hackbarth performed and continue to perform all contractual and other duties

owed to KFA in good faith and to the best of their abilities.  True and correct copies of the Management Agreements are attached hereto as <u>Exhibit F</u>.

28.  The Stock Purchase Agreement also provided ongoing obligations for Defendants.  Among other things, Defendants were to provide certain administrative services to KFA in exchange for 20% of KFA's Adjusted Gross Revenues per quarter.

29.  Defendants were not entitled to this 20% fee if they breached their obligations under the Stock Purchase Agreement or the Zero Coupon Note.

### III.  DEFENDANTS' DEFAULTS AND FAILURE TO CURE

30.  No later than January 14, 2010, Defendants had substantially defaulted under the Stock Purchase Agreement and the Zero Coupon Note.

31.  Pursuant to cross-default provisions in the Term Note, the Note, and the Escrow Agreement, Defendants also defaulted under the Term Note, the Note, and the Escrow Agreement.

32.  Among other things, Defendants failed to make the October 1, 2009 payment due under the Zero Coupon note and failed to satisfy numerous ongoing obligations under the Stock Purchase Agreement, by failing to provide "back office" services which they were contractually obligated to provide, including but not limited to the timely payment of 401(k) contributions, taxes and other business expenses.

33.  Moreover, while Defendants failed to provide the payments and services they were obligated to provide under both the Stock Purchase Agreement and the Zero Coupon Note, Defendants continued to siphon an advance quarterly fee from KFA.

34.   On multiple occasions, Defendants improperly caused payments to be made from KFA to them in excess of the properly calculated quarterly fee.

35.   Defendants' wrongful misappropriation and diversion of KFA's revenue significantly hindered KFA's ability to pay legitimate creditors.

36.   Defendants' wrongful misappropriation and diversion of KFA funds and wasting of KFA's business is directly damaging to Plaintiff, since Plaintiff holds a security interest in the stock of KFA and is entitled to possession of KFA's stock, and since Plaintiff is a shareholder of Defendant Mesa Holdings.

37.   On January 14, 2010, Plaintiff sent a letter to Defendants advising Defendants of the above described defaults.

38.   As of February 16, 2010, Defendants had not cured the defaults identified to it no later than January 14, 2010.  Accordingly, Plaintiff delivered a final notice of default to Ed Baker, Chief Executive Officer of  Defendants on or about February 16, 2010.

39.   On or about February 16, 2010, Plaintiff also notified Stark & Stark in writing that, pursuant to Plaintiff's rights under the Escrow Agreement and the Zero Coupon Note, Plaintiff was entitled to immediate possession of 51% of KFA's stock then being held in escrow.

40.   On or about February 19, 2010, Stark & Stark notified Plaintiff that Defendants disputed Plaintiff's claim of default.  In light of this, Stark & Stark has continued holding the KFA stock as required by the Escrow Agreement.

8

41.    Defendants have no legitimate basis for disputing their defaults and merely did so to interfere with Plaintiff's right to possession of KFA's stock.

42.    As of the date hereof, Defendants remain in default under the Stock Purchase Agreement, the Zero Coupon Note, the Note, the Term Note, and the Escrow Agreement.

43.    The time allowed for Defendants to cure the defaults has passed.

## IV.    DEFENDANTS' ONGOING FINANCIAL AND LEGAL TROUBLES

44.    Defendants are currently facing dire financial and legal troubles which, in addition to likely causing the defaults complained of herein, have a high likelihood of destroying all value of Defendants.

45.    Defendants' financial and legal troubles are also threatening the value of KFA's stock, thereby depriving Plaintiff entirely of recovery for the damages it has suffered as a result of Defendants' breaches.

46.    Additionally, the conduct of Defendants' current directors and management is unfairly prejudicing the rights of Plaintiff, both as a shareholder of Mesa Holdings and as a creditor of Defendants.    There are other shareholders/creditors of Defendants similarly situated to Plaintiff who risk similar destruction of their stock value, as well as impairment of their collateral.

47.    Upon information and belief, and for the reasons described below, any remaining corporate assets of Defendants are being misapplied and wasted at the direction of Ed Baker as majority shareholder, controlling board member, and controlling officer of Defendants.

48.    Defendants were in dire financial straits well before the closing of their deal with Plaintiff.   Among other things, Defendants were heavily leveraged and facing a severe cash flow emergency because the majority of their debt had been deferred but was soon about to come due.

49.    These financial hardships were caused and exacerbated by, among other things, basic mismanagement of the Defendants' financial record keeping and disbursement procedures, as well as an improper practice of distributing cash to certain related party shareholders through "bonuses" and undocumented "loans."

50.    In an effort to obtain additional financing to meet basic business expenses, Defendants further mismanaged the company by improperly pledging certain assets to multiple creditors without consent of prior secured creditors.

51.    On May 3, 2010, Mesa Holdings circulated a letter to shareholders advising of a situation with a "toxic shareholder" who held stock and secured debt issued by Mesa Holdings.   The letter stated that a court-appointed receiver for the "toxic shareholder" had proposed a settlement demand to recover certain secured debt and interest in Mesa Holdings owed to the "toxic shareholder."

52.    Mesa Holdings stated it could not entertain the settlement proposal because it had no capital or available cash.   Mesa's insolvency was confirmed in its December 31, 2009 unaudited balance sheet, which showed Total Current Assets of $1,889,728.00 and Total Current Liabilities of $9,661,389.00.   Total Stockholders Equity was reported as a negative $7,918,812.00.

53.     The "toxic shareholder" referenced in the Mesa Holdings letter is Trevor Cook, a local money manager who recently pleaded guilty in this Court to mail fraud and tax evasion charges stemming from his running of an international Ponzi scheme which defrauded more than 1,000 people out of at least $190 million.

54.     Cook's status as a secured creditor and shareholder of Defendants is not the only troubling connection between Cook, Defendants, and Ed Baker.

55.     On or about July 18, 2009, Ed Baker, CEO of Defendants was quoted in a Star Tribune newspaper article as saying about Cook, "I like Trevor a lot. I find him intelligent, extremely intelligent." When describing one of Cook's currency trading strategies, which Baker was marketing through Mesa Holdings, Baker said, "All I can tell you is it works."

56.     According to the article, Baker represented to clients that Cook managed over $4 billion of assets. Baker also claimed to have validated the assets-under-management-claim through unidentified sources. Notably, however, Cook has admitted that he lied about having $4 billion in assets under management, thus Baker's "validation" of this claim was impossible and a misrepresentation.

57.     Baker had also represented to shareholders like Plaintiff, through whom he expected to market Cook's currency scheme, that "after considerable study, we determined the Oxford's [Trevor Cook's company] hedged carry trade arbitrage strategy is perhaps as compelling and secure as any investment we are aware of...." This was another impossible claim and a misrepresentation.

11

58.    On or about October 16, 2009, Cook sued Baker, Defendants, and others. A copy of this Complaint is attached hereto as Exhibit G.

59.    According to Cook's Complaint, Baker fraudulently induced Cook to invest $3,550,000.00 in Mesa Holdings from September 2008 through June 2009, $1,050,000.00 of which was never documented in any kind of paperwork.

60.    Cook also allegedly invested $200,000.00 in a currency fund managed by Baker, which was supposed to be available for withdrawal upon request, but was not.

61.    Upon information and belief, Baker is attempting to settle the Cook lawsuit with Cook's court-appointed receiver entirely with corporate assets of Defendants, notwithstanding the fact that Baker may be personally liable for amounts ultimately owed to the Cook receivership.

62.    Upon information and belief, Baker is also causing Defendants to fail to satisfy obligations owed to third-parties positioned similar to Plaintiff.

## V.    MESA HOLDINGS' REFUSAL TO PERMIT INSPECTION OF CORPORATE RECORDS.

63.    Given Plaintiff's knowledge and concern about Defendants' financial struggles and their relationship to Trevor Cook, Plaintiff sent a demand for access to corporate records pursuant to Minn. Stat. § 302A.461.

64.    The demand requested access to documents which, pursuant to the statute, Plaintiff had an absolute right to review and copy.

65.    Further, the demand requested access to additional documents for the proper purpose of, among other things, fully evaluating Defendants' financial condition

and ability to meet contractual and other obligations, and evaluating management competence and loyalty:

- Any documents (including but not limited to transactional documents, due diligence documents, and correspondence) relating to transactions between Mesa (including its subsidiaries) and Trevor Cook; Crown Forex, LLC; Universal Brokerage FX; Universal Brokerage FX Diversified; Oxford Global Partners, LLC; Oxford Global Advisors, LLC; Universal Brokerage FX Advisors, LLC; UBS Diversified FX Advisors, LLC; Universal Brokerage FX Growth, L.P.; UBS Diversified FX Growth L.P.; Universal Brokerage FX Management, LLC; UBS Diversified FX Management, LLC; and UBS Diversified Growth, LLC.

- Any documents (including but not limited to transactional documents, due diligence documents, and correspondence) relating to transactions between Mesa (including its subsidiaries) and Ed Baker; Baker 500 Corp.; Baker Capital LLC; G5 Currency Fund - Affiliate Services LP; G5 Currency Fund - Institutional Series LP.

- Any documents relating to the litigation captioned Trevor Cook v. L Edward Baker, et al., Hennepin County Case No. 27-CV-09-21495.

- Any documents relating to any outstanding Zero Coupon Convertible Promissory Notes issued by Mesa, and associated Security Agreements (including but not limited to the Notes and Security Agreements themselves, documents relating to all "Pooled Stock" as defined in the Notes, and correspondence).

- Any documents relating to any regulatory compliance or enforcement action or inquiries by the U.S. Securities and Exchange Commission.

66.     Defendants did not provide all documents responsive to Plaintiff's demand, despite a statutory obligation to do so.

**COUNT I**
**(Breach of Contract)**

67.     Plaintiff incorporates all paragraphs above as if stated herein.

13

68.     Plaintiff and Defendants are parties to the Stock Purchase Agreement, the Note, the Term Note, the Zero Coupon Note and Escrow Agreement, as described more fully above.

69.     Plaintiff has fully performed all obligations required of it under the Stock Purchase Agreement, the Note, the Term Note, the Zero Coupon Note and Escrow Agreement.

70.     Defendants have materially breached the Stock Purchase Agreement, the Note, the Term Note, the Zero Coupon Note and Escrow Agreement as alleged above.

71.     Defendants' breaches of contract have caused Plaintiff to suffer more than $75,000.00 in monetary damages and losses, both directly and consequentially attributable to the breaches.

72.     As a result of Defendants' breaches, Plaintiff is entitled to recover monetary damages and immediate possession of KFA stock being held in escrow as collateral.

### COUNT II
**(Replevin/Claim and Delivery of KFA Stock Held By Stark & Stark)**

73.     Plaintiff incorporates all paragraphs above as if stated herein.

74.     Nominal Defendant/Escrowee Stark & Stark is in possession of certain collateral, specifically KFA stock.

75.     51% of KFA stock rightfully belongs to Plaintiff by virtue of Defendants' breaches of the Zero Coupon Note and Escrow Agreement, described more specifically

above, and Plaintiff has a right to the remaining 49% of the stock upon satisfaction of conditions set forth in the Escrow Agreement.

76.     Nominal Defendant/Escrowee Stark & Stark has no remaining right, title or interest in the KFA stock.

77.     Defendants have no remaining right, title, or interest in the KFA stock.

78.     Under Minnesota Statutes section 336.9-101, *et seq.*, Minnesota Statutes Chapter 565, the terms of the Stock Purchase Agreement, the Zero Coupon Note, the Escrow Agreement, and other applicable law, Plaintiff is entitled to take possession of, and pursue its rights and remedies with respect to the KFA stock, including, without limitation, the immediate foreclosure on and liquidation of the same.

**COUNT III**
**(Violation of Minn. Stat. § 302A.461)**

79.     Plaintiff incorporates all paragraphs above as if stated herein.

80.     Plaintiff is a shareholder of Defendant Mesa Holdings.

81.     Plaintiff made a demand on Defendant Mesa Holdings for access to corporate books and records as allowed by statute.

82.     Pursuant to the demand, Defendant Mesa Holdings was required to provide access to statutorily identified documents as well as additional documents requested by Plaintiff for the proper purpose of fully evaluating Mesa Holdings' financial condition and its ability to meet contractual and other obligations, and evaluating management competence and loyalty.

83.    Defendant Mesa Holdings failed, without proper justification, to allow access to the corporate books and records as requested and as required by statute.

84.    Plaintiff is entitled to an Order that Defendant Mesa Holdings make these documents available immediately.

## COUNT IV
### (Involuntary Dissolution of Defendant Mesa Holdings – Minn. Stat. §302A.751)

85.    Plaintiff incorporates all paragraphs above as if stated herein.

86.    Plaintiff is a minority shareholder of Mesa Holdings.

87.    Mesa Holdings is insolvent.

88.    The directors and/or those in control of Mesa Holdings, including but not limited to Ed Baker, are acting in a manner unfairly prejudicial toward Plaintiff and other shareholders and creditors as alleged more fully above.

89.    Mesa Holdings' remaining corporate assets, if any, are being misapplied or wasted at the direction of Ed Baker and current management, as alleged more fully above.

90.    Defendants' association with Trevor Cook at the direction of Baker, combined with Defendants' refusal to produce relevant corporate records as mandated by law, demonstrates that current management is, at best, incompetent and, at worst, dishonest.

91.    No remedy short of dissolution will adequately remedy the current state of Defendant Mesa Holdings, while adequately protecting the interests of Plaintiff and similarly situated shareholders.

## COUNT IV
### (Appointment of Receiver – Minn. Stat. § 576.01)

92.     Plaintiff incorporates all paragraphs above as if stated herein.

93.     Mesa Holdings is insolvent.

94.     Plaintiff has a right to property that is in the possession of Mesa Holdings as a result of its status as a creditor and as a shareholder of Mesa Holdings.

95.     The property to which Plaintiff is entitled is in danger of loss and/or material impairment if allowed to remain in the control of Ed Baker and the current management of Mesa Holdings.

96.     Under the circumstances alleged herein, the appointment of a receiver is allowed and warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.     An Order holding that Defendants have breached their contracts with Plaintiff and Plaintiff is entitled to recover from Defendants monetary damages and losses, in an amount to be determined at trial;

2.     An Order that Plaintiff is entitled to immediate possession of 51% of KFA stock currently being held in escrow by Nominal Defendant/Escrowee Stark & Stark, and that Plaintiff has a right to possession of the remaining 49% of the KFA stock upon satisfaction of conditions set forth in the Escrow Agreement;

3.     An Order that Plaintiff is entitled to immediate review of Defendant Mesa Holdings' corporate books and records as requested;

4.    An Order that Defendant Mesa Holdings shall be dissolved;

5.    An Order appointing a receiver to oversee the dissolution of Defendant

Mesa Holdings;

6.    Such other and further relief, including, without limitation, monetary relief,

attorney's fees and costs, which the Court may deem just, equitable and appropriate

under the circumstances presented.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a jury trial as to all issues so triable.

Dated: May 19, 2010                    WINTHROP & WEINSTINE, P.A.


                                       By:   s/Brent A. Lorentz          .
                                             Geoffrey P. Jarpe, #0049761
                                             Brent A. Lorentz, #0386865

                                       225 South Sixth Street
                                       Suite 3500
                                       Minneapolis, Minnesota 55402
                                       (612) 604-6400

                                       Attorneys for Plaintiff


5227452v1

18

# EXHIBIT F

AO450 (Rev. 5/85)   Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
### District of Minnesota

Michael P. Kabarec, as Trustee under the
Michael P. Kabarec Declaration of Trust dated
June 29, 1988,
    Plaintiff,

V.

Mesa Financial Advisors, Inc., a Minnesota
corporation, and Mesa Holdings, Inc., a
Minnesota corporation,
    Defendants.

And

Stark & Stark, P.C., a New Jersey professional
corporation
    Nominal Defendant/Escrowee

**JUDGMENT IN A CIVIL CASE**

Case Number:  10-cv-2089 (MJD/SRN)

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

1. Based on the preceding Findings, MFA's and Mesa Holdings' failure to answer or otherwise respond to Plaintiff's Complaint constitutes a default.

2. Pursuant to FED. R. CIV. P. 12 and 55, Plaintiff is entitled to default judgment against MFA and Mesa Holdings for the relief requested in Plaintiff's Complaint, and, more specifically, it is declared that MFA and Mesa Holdings breached the Note, the Term Note and the Zero Coupon Note.

3. The Court hereby orders that default judgment be entered in favor of Plaintiff and against MFA and Mesa Holdings declaring that MFA and Mesa Holdings are jointly and severally liable to Plaintiff in the principle amount of $1,841,506.00, plus accrued interest of $164,704.00, for a total of $2,006,210.00.

4. Plaintiff's claims against MFA and Mesa Holdings for Violation of Minnesota Statutes §302A.461, Involuntary Dissolution of Mesa Holdings pursuant to Minn. Stat. §302A.751, and Appointment of a Receiver over Mesa Holdings pursuant to Minn. Stat. §576.01 are dismissed without prejudice.

December 23, 2010

Date

RICHARD D. SLETTEN, CLERK

s/L. Brennan

(By)                    L. Brennan,   Deputy Clerk

David Joseph Huber v.
Mesa Holdings, Inc., et al.
Case No. 0:10-cv-02526 (PJS/JJG)

# EXHIBIT G

May 11, 2010

Ed Baker
Mesa Financial Advisors, Inc.
Mesa Holdings, Inc.
5900 Green Oak Drive
Suite 208
Minnetonka, Minnesota 55343

Dear Ed:

      Mesa Financial Advisors, Inc. and Mesa Holdings, Inc. as successor to Mesa Holdings, LLC (collectively, "Mesa") are currently in default under the Purchase Agreement entered into as of April 1, 2007 (the "Purchase Agreement"), under the three Promissory Notes entered into in connection with the Purchase Agreement, including the Promissory Note in the original principal amount of $1,996,500 (the "Promissory Note"), the Term Promissory Note in the original principal amount of $1,996,500 (the "Term Note"), and the Zero Coupon Convertible Promissory Note in the original principal amount of $1,049,070 (the "Zero Coupon Note") and under various transaction-related agreements.

      Pursuant to Section XIII of the Purchase Agreement, Section 6 of the Promissory Note, Section 6 of the Term Note and Section 3.01 of the Zero Coupon Note, you are notified that the undersigned hereby declares the principal of and the accrued interest on the Promissory Note, the Term Note and the Zero Coupon Note to be immediately due and payable. I hereby demand immediate payment in full of all Mesa's obligations owed to me under the Promissory Note, the Term Note and the Zero Coupon Note, and under all other related agreements.

      Nothing contained in this notice, nor any action or inaction by the undersigned, constitutes an election of remedies or a waiver of any default or events of default under the Promissory Note, the Term Note and the Zero Coupon Note or any related agreements. The undersigned specifically reserves all rights and remedies under the Purchase Agreement, the Promissory Note, the Term Note, the Zero Coupon Note and any related agreements, and under applicable law, which the undersigned may possess against Mesa and all related parties under the Purchase Agreement, the Promissory Note, the Term Note, the Zero Coupon Note and any related agreements, whether or not expressly set forth herein.

                Sincerely,

                David Huber